Sheldon ROCKLER and Sarah Rockler, Plaintiffs,

v.

The MINNEAPOLIS COMMUNITY DE-VELOPMENT AGENCY; the City of Minneapolis; La Societe Generale Im-mobiliere, a French corporation; and LSGI, Inc.; a Delaware corporation, De-fendants.

Donald and Nancy RUSH and the Nancy Rush Trust, Plaintiffs,

v.

The MINNEAPOLIS COMMUNITY DE-VELOPMENT AGENCY; the City of Minneapolis; La Societe Generale Im-mobiliere, a French corporation; and LSGI, Inc.; a Delaware corporation, De-fendants.

RESOLUTION TRUST CORPORATION as Receiver Midwest Federal Savings Association, Plaintiff,

v.

The MINNEAPOLIS COMMUNITY DE-VELOPMENT AGENCY; the City of Minneapolis; La Societe Generale Im-mobiliere, a French corporation; and LSGI, Inc.; a Delaware corporation, De-fendants.

Nos. 3–94–449, 3–94–450 and 3–94–453.

United States District Court, D. Minnesota, Third Division.

Oct. 17, 1994.

---

Grover C. Sayre, III. and Michael R. O'Brien, St. Paul, MN, for plaintiffs Sheldon and Sarah Rockler, Donald and Nancy Rush and the Nancy Rush Trust and the Resolution Trust Corp.

James A. Moore and Michael T. Norton, Minneapolis, MN, for defendants City of Minneapolis and the Minneapolis Community Development Agency.

Carter G. Phillips, Washington, DC, Michael C. Mahoney and Jerome S. Rice, Minneapolis, MN, for defendants La Societe Generale Immobiliere and LSGI, Inc.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Plaintiffs own property or are successors in interest to the owners of property located within the "footprint" area designated for the proposed development of a downtown mall on Nicollet Avenue by Defendants La Societe Generale Immobiliere and LSGI, Inc. (hereinafter collectively referred to as "LSGI"). Pursuant to a Development Contract between LSGI and the City of Minneapolis and the Minneapolis Community Development Agency (hereinafter collectively referred to as the "City") dated November 3, 1986, the City would acquire all property within the "footprint" and thereafter lease such property to LSGI for the development of the mall. The owners of the property were notified their property would be purchased for the project and that appraisers would be appraising the property for the purpose of such acquisition. On November 3, 1987, after LSGI had acquired commitments from two anchor tenants, the City and LSGI entered into a 99 year lease for the property located within the "footprint". Thereafter, negotiations between the City and LSGI soured and the Development Contract was terminated by the City.

In June 1989, LSGI commenced suit against the City claiming, inter alia, breach of contract, and violations of due process. On June 9, 1989, LSGI also filed a notice of lis pendens against all property located within the "footprint". After a three week trial in February 1993, a jury found in favor of LSGI on its breach of contract claim and awarded LSGI approximately 34 million in damages.

Plaintiffs now bring this action against the City and LSGI alleging the "cloud of con-

demnation" and the notice of lis pendens have caused them damages. Defendants now move the court for an order dismissing the complaint.

## I.

Plaintiffs have asserted a number of claims against the City, including federal and state taking claims, violations of procedural and substantive due process, and additional state claims of third party beneficiary breach of contract, interference with prospective business advantage, tortious interference with contract and negligence.

## FEDERAL TAKING CLAIM

The City moves to dismiss the federal taking claims on the basis it is unripe for review in federal court based on the United States Supreme Court decision in *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson*, the Court held that a taking claim is not ripe until the governmental entity charged with implementing the regulation has reached a final decision. *Id.* at 186, 105 S.Ct. at 3116 and until the plaintiff has exhausted its state remedies. *Id.* at 194–195, 105 S.Ct. at 3121.

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation ... Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a " 'reasonable, certain and adequate provision for obtaining compensation' " exist at the time of the taking ... If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking.

*Id.*

■ The state of Minnesota provides a process by which plaintiffs may be compensated. Pursuant to the Minnesota Constitution, Article I, Section 13, private property may not be taken, destroyed or damaged for a public purpose without just compensation. To enforce this provision, a plaintiff may bring an inverse condemnation action by petition for writ of mandamus. *Wilson v. Ramacher*, 352 N.W.2d 389 (Minn.1984); *Alevizos v. Metropolitan Airports Comm'n*, 317 N.W.2d 352 (Minn.1982).

■ Plaintiffs argue the exhaustion requirement is not applicable in this case because the state courts do not provide a "reasonable, certain and adequate remedy." It is the Plaintiffs' position that an inverse condemnation action concerning a "temporary taking" would be futile in light of two decisions by the Minnesota Court of Appeals. Neither case, however, definitively strips Plaintiffs of a remedy.

In *Woodbury Place Partners v. City of Woodbury*, 492 N.W.2d 258 (Minn.Ct.App. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993), plaintiffs argued that a two year moratorium on development constituted an unconstitutional taking without just compensation. In support of their claim, the plaintiffs relied upon *Lucas v. South Carolina Coastal Council,* —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), and *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The Minnesota Court of Appeals refused to interpret these opinions to hold that a two year moratorium on development constitutes a categorical taking. *Woodbury,* at 263. Instead, the court ruled that such moratorium must be construed as a regulation on property that should be subjected to the three factor rule of *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).[1] Therefore, *Woodbury* does not support Plaintiff's argument that a "temporary taking" can never be compensated in Minnesota.

In *Fitger Brewing Co. v. State of Minnesota,* 416 N.W.2d 200 (Minn.Ct.App.1987) the court held that the plaintiff had failed to establish a taking because the state did not physically or legally prevent the owner's use

---

1. The *Penn Central* factors include: 1) the economic impact of the regulation on the claimant; 2) the extent to which the regulation has interfered with distinct investment-backed expectations; and 3) the character of the governmental regulation. *Id.*

of the property or force its closing. The plaintiff in *Fitger* owned a brewery that was located on land included in a preliminary plan for a major highway project. The plaintiff requested from the state assurances that his brewery would be taken for the highway project. The state responded that according to the plan in existence at that time, it seemed impractical for plaintiff to make improvements on his property. The state also informed plaintiff that it could not acquire plaintiff's property until plans were final, and that the possibility existed that plaintiff's property would not be taken if the plans changed. Based on these representations by the state, the plaintiff chose not to make improvements to the brewery and closed it down. After a number of years, the land taken for the highway project did not include plaintiff's property.

The *Fitger* court held the concept of a de facto taking does not extend to a case "where the landowner's freedom of choice on improvements is not substantially destroyed by state action." *Fitger*, at 208. Based on its facts, therefore, the plaintiff in *Fitger* was denied relief. Plaintiffs allege in this action, however, that the City's actions substantially interfered with its ability to rent or sell its property. *Fitger* is therefore distinguishable on its facts.

Contrary to Plaintiffs' argument, Minnesota courts have not definitively ruled that precondemnation activity can never be actionable as a taking. As a result, this court cannot find that an attempt by Plaintiffs to exhaust state remedies will be futile. Accordingly, Plaintiffs' federal taking claims are unripe until state remedies have been exhausted.

## COURT'S JURISDICTION OVER THE RESOLUTION TRUST CORPORATION

■ Plaintiff Resolution Trust Corporation (RTC) argues the *Williamson* exhaustion requirement does not apply to it as the federal courts have original jurisdiction over the RTC and any claims brought by the RTC are deemed to have arisen under the laws of the United States. 12 U.S.C. § 1441a(*l*)(1). The RTC further argues that federal law applies to the rights and liabilities of the parties in this case. Therefore, federal law

applies to RTC's claim of inverse condemnation.

The City asserts that although federal courts do have original jurisdiction to hear RTC's claims, such fact does not preclude this court from sending the RTC to state court to determine the inverse condemnation claim. The City cites to *J.B. Ranch, Inc. v. Grand County*, 958 F.2d 306 (10th Cir.1992) which is a diversity case where the court ruled a federal takings claim unripe as state court remedies had not been exhausted.

The City also relies upon the recent United States Supreme Court opinion in *O'Melveny & Myers v. Federal Deposit Insurance Corporation*, —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) in support of its argument that the exhaustion requirement equally applies to the RTC's federal takings claim. In *O'Melveny*, the Court noted that in its capacity as a receiver, the RTC in effect steps into the shoes of the insolvent. *Id.*, at ——, 114 S.Ct. at 2054. As such, any defense good against the original party is good against the receiver. *Id.* The Court thereafter held that state law shall be applied to state claims absent a specific provision in FIRREA that required imposition of federal law. *Id.*

Although the opinion in *O'Melveny*, does not address the jurisdictional issue, it does provide persuasive support for the City's position. The RTC asserts a federal takings claim that is not ripe for review in federal court until state remedies have been exhausted. *See, Williamson, supra.* This requires the resolution of an inverse condemnation proceeding, which is a state claim. Finally, there is no provision in FIRREA which specifically addresses this type of claim.

The Court in *O'Melveny* recognized that there may be situations in which the application of "federal common law" is warranted, but situations are limited to where there is "a significant conflict between some federal policy or interest and the use of state law." *Id.*, at ——, 114 S.Ct. at 2054–2055, *citing Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). But where "[t]he rules of decision at issue [ ] do not govern the primary conduct

of the United States or any of its agents or contractors, but affect only the [RTC]'s rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that has already occurred" state law should be applied. *Id.*

There is no identifiable conflict between federal law or policy and the use of state law to determine the inverse condemnation question. Furthermore, the takings claim is based upon the conduct of defendants, who are either private parties or agents of the state, not the United States or its agent. Therefore, absent a conflict with federal law or policy, state law must be applied to determine if just compensation has been denied before a federal taking claim can be asserted.

Accordingly, this court finds no compelling reason to treat the RTC differently with regard to its takings claim as the other plaintiffs asserting the identical claims. Based upon *J.B. Ranch* and *O'Melveny*, RTC's federal takings claim is dismissed as unripe for review in this court until state court remedies have been exhausted.

## FEDERAL SUBSTANTIVE AND DUE PROCESS CLAIMS

The City argues that Plaintiffs' federal substantive and procedural due process claims are also unripe as the facts supporting these claims fall squarely within the specific parameters of the Just Compensation Clause. Thus, it is the City's position that the exhaustion requirement applicable to federal taking claims apply to due process claims as well. Plaintiffs argues these claims must be determined on their merits as they are distinct from the taking claims.

The eighth circuit has not yet ruled on this issue, but the issue has been addressed and determined by the ninth and tenth circuits. In *Sinaloa Lake Owners Assoc. v. City of Simi Valley*, 882 F.2d 1398, 1404 (9th Cir. 1989), the court held that the exhaustion requirement does not apply to federal procedural and substantive due process claims even though such claims arise out of the same facts that give rise to a takings claim.

The court noted that two or more legal theories may cover the same conduct and a plaintiff has the right to prove each claim on its terms. *Id.*

By contrast, the tenth circuit has ruled that in certain circumstances, a more generalized Fourteenth Amendment claim should be subsumed within the more particularized protections of the Just Compensation Clause. *Miller v. Campbell County*, 945 F.2d 348 (10th Cir.1991). The tenth circuit supported its ruling upon the United States Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Graham*, the plaintiff sought relief under the Fourth and Fourteenth Amendment for injuries suffered during an investigative stop. The Court determined that: "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive government conduct, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Miller*, at 353 (citing *Graham*, 490 U.S. at 395, 109 S.Ct. at 871).

The *Miller* court recognized the ninth circuit's decision in *Sinaloa Lake*, but held it factually distinguishable as the conduct in *Sinaloa Lake* went beyond the penumbra of the Just Compensation Clause, while the conduct in *Miller* did not.[2]

In a subsequent case, a plaintiff filed suit against the government after certain roads on their property were declared public roads. *J.B. Ranch, Inc. v. Grand County*, 958 F.2d 306 (1992). Relying on its decision in *Miller*, the tenth circuit held the plaintiff's taking claim was unripe and that the procedural due process claim did not merit analysis distinct from the takings analysis. *Id.*, at 309. Therefore, the due process claim was also dismissed as unripe. *Id.*, at 310. In a footnote, the court distinguished *Sinaloa Lake* because in that case, the government destroyed plaintiff's property, while in the present case, the government did not enforce or

---

**2.** The conduct involved in *Sinaloa Lake* was government destruction of a privately owned lake and dam. In *Miller,* the conduct involved evacuation orders and a governmental declaration that homes were uninhabitable. The plaintiffs in *Miller* argued the homes were not uninhabitable, therefore they were deprived of their property in violation of the Constitution.

otherwise act on purported property rights. *Id.* at 309 n. 5.

The Minnesota cases cited by Plaintiffs in support of their position provide only limited guidance. In *Littlefield v. City of Afton*, 785 F.2d 596 (8th Cir.1986) the eighth circuit addressed claims that arose out of a denial of a building permit. The plaintiff brought federal procedural and substantive due process claims as well as a federal taking claim. The taking claim was dismissed as unripe under *Williamson*, while the due process claims were dealt with on their merits. The court did not address, however, the specific issue of whether the exhaustion requirement would or should apply to the due process claims.

In *Queen Anne Courts v. City of Afton*, 726 F.Supp. 733 (D.Minn.1989), Judge Renner dismissed a federal taking claim as unripe under *Williamson*, and dismissed procedural and substantive due process claims on their merits. And finally, in *Jacobs v. The City of Minneapolis et al.*, 1987 WL 14716 (D.Minn.1987), Judge MacLaughlin dismissed a procedural due process claim on its merits, and dismissed the federal takings claim as unripe. With regard to the substantive due process claim, Judge MacLaughlin held that "plaintiff's claim that defendants unconstitutionally took his property without just compensation cannot serve as a basis for his substantive due process claim inasmuch as plaintiff's taking claim is not ripe for adjudication. It would make little sense to bar plaintiff's taking claim as premature only to adjudicate the selfsame claim under the rubric of substantive due process." *Id.*, at 8.

■ This court finds the reasoning of the tenth circuit and Judge MacLaughlin in *Jacobs* as persuasive to hold that where procedural and substantive due process claims fall squarely within the federal takings claim, the due process claims should not be deemed ripe until the state court has ruled on the takings issue. In this case, Plaintiffs do not allege facts that fall outside "the penumbra of the Just Compensation Clause". Accordingly, they are unripe for review in this court.

**STATE CLAIMS**

■ Given the fact that Plaintiffs' taking claims must first be resolved in state court, this court will decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). As the claims asserted against LSGI are so interrelated to the claims against the City, the court declines to exercise supplemental jurisdiction over claims against LSGI as well under 28 U.S.C. § 1367(c)(4). Accordingly, the court will not address LSGI's motion to dismiss.

**ORDER**

Accordingly, based upon the above, and all files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Minneapolis Community Development Agency and the City of Minneapolis' Amended Motions to Dismiss Plaintiffs' Amended Complaints are GRANTED. All federal claims are dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. The court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) and (4).

2. Defendants La Societe Generale Immobiliere and LSGI, Inc.'s motions to dismiss are DENIED as **MOOT**.