**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 24 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

JEANNIE JAMES,

    Plaintiff-Appellant,

v.

GRAND LAKE MENTAL HEALTH CENTER,
INC.; PAULA VELLA, individually and in her
capacity as employee of Grand Lake Mental Health
Center, Inc.; SIOUX GRENINGER, individually
and in her official capacity as a police officer of
the City of Pryor, Oklahoma; RONNIE BATT,
individually and in his official capacity as a police
officer of the City of Pryor, Oklahoma; TRENT
HUMPHREY, individually and in his official
capacity as a police officer of the City of Pryor,
Oklahoma; CITY OF PRYOR; BAPTIST
HEALTHCARE CORPORATION, d/b/a Mayes
County Medical Center; CHRISTOPHER
DELONG, Dr., sued as Dr. Christopher Delong,
D.O., individually and in his capacity as employee
of Mayes County Medical Center; K.W.
SOUTHERN, Dr., sued as Dr. K.W. Southern,
D.O., individually and in his capacity as employee
of Eastern State Hospital, Vinita, Oklahoma; JOE
FERMO, Dr., sued as Dr. Joe Fermo, M.D.,
individually and in his capacity as employee of
Eastern States Hospital, Vinita, Oklahoma,

    Defendants-Appellees.

No. 97-5157
(N.D. Okla.)
(D.Ct. No. 96-CV-631-C)

## ORDER AND JUDGMENT[*]

Before **BALDOCK, BRORBY**, and **LUCERO**, Circuit Judges.

Jeannie James appeals the district court's adverse rulings on her 28 U.S.C. § 1983 claims against nine defendants stemming from her involuntary committal to a state mental hospital. We exercise jurisdiction over her appeal pursuant to 28 U.S.C. § 1291 and affirm.

For background purposes, we will provide a general description of the incident underlying Ms. James' claims. In addition to the general information discussed below, Ms. James makes many specific allegations regarding acts of maliciousness and bad faith by the defendants. Although we view the facts in the light most favorable to Ms. James, as required, *see Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 (10th Cir.) (construing facts in light most favorable to plaintiff when reviewing dismissal pursuant to Fed. R. Civ. P. 12(b)(6)), *cert. denied*, 118 S. Ct. 55 (1997); *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996)

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(examining factual record in light most favorable to nonmovant when reviewing grant of summary judgment), discussion of many of these allegations is unnecessary. To the extent any of Ms. James specific allegations are relevant to the disposition of a particular issue, they will be discussed in the section pertaining to that issue.

In 1995, Ms. James was receiving outpatient treatment for depression at Grand Lake Mental Health Center (Grand Lake) in Pryor, Oklahoma. On July 11, 1995, a therapist at Grand Lake, defendant Paula Vella, determined Ms. James needed to be detained and transported to Oklahoma Eastern State Hospital, pursuant to the Oklahoma Emergency Detention and Protective Custody Act, Okla. Stat. tit. 43A, §§ 5-206 to 5-212. That Act provides for the emergency detention of persons who appear to be mentally ill. *See* Okla. Stat. tit. 43A, § 5-207. Ms. Vella called the local police department for assistance. An officer of the City of Pryor Police Department, defendant Sioux Greninger, arrived at Grand Lake, picked up Ms. James, and took her to a local hospital, Mayes County Medical Center (the Medical Center). Once at the Medical Center, Officer Greninger escorted Ms. James into the emergency room.

Ms. Vella went to the hospital separately and dropped off a completed form

entitled "Referral to Eastern State Hospital."  In addition, while at the hospital, Ms. Vella completed portions of a separate statement that was to be filled out by the examining doctor pursuant to the emergency detention act.  *See* Okla. Stat. tit. 43A, § 5-208A.

The doctor on duty in the emergency room, defendant Christopher Delong, completed the remaining portions of the emergency detention act statement and signed it, under the words:  "Upon person [sic] examination of Jeannie James, I am of the opinion that this person is a person requiring treatment, and should be held in emergency detention, as provided by law."  A hospital official collected the pertinent paperwork and provided copies to Officer Greninger.  Officer Greninger, whose shift was ending, handed the paperwork to another officer, defendant Trent Humphrey, and told him to take Ms. James to Eastern State Hospital.  Officer Humphrey took Ms. James to Eastern State in his cruiser.

Upon arrival at Eastern State, Ms. James was examined by a psychiatrist, defendant Joe Fermo.  Following the examination, Dr. Fermo certified that Ms. James should be admitted to the hospital pursuant to the emergency detention statute, even though the results of his examination were generally favorable.  The following day, July 12, 1995, Ms. James was examined by another Eastern State

doctor, defendant K.W. Southern. Dr. Southern also certified that Ms. James should be admitted pursuant to the emergency detention statute. Dr. Southern filled out a petition for an emergency detention order and had it filed in state court on July 14, 1995.

Ms. James remained at Eastern State until July 18, 1995, when she was discharged pursuant to a court order, following an examination by a court-appointed commissioner.

Ms. James filed a complaint in district court pursuant, in part, to 42 U.S.C. § 1983 (alleging underlying violations of her Fifth and Fourteenth Amendment rights). In the complaint, she stated claims against the nine defendants involved in this appeal: Ms. Vella, Grand Lake Mental Health Center, Officer Greninger, Officer Humphrey, the City of Pryor, Dr. Delong, Mayes County Medical Center, Dr. Fermo, and Dr. Southern. In six separate orders, the district court disposed of the claims against all of the defendants. Ms. James appeals those adverse dispositions.

***The claims against Ms. Vella and Grand Lake***

In her complaint, Ms. James alleged Ms. Vella and Grand Lake wrongfully caused her to be confined pursuant to Oklahoma's emergency detention statute "in order to satisfy [Ms. Vella's] own sadistic desires and to make an example to others."[1] This, claimed Ms. James, constituted a deprivation of her right to due process as guaranteed by the Fourteenth Amendment, in violation of § 1983.[2]

On July 3, 1997, the district court dismissed the claims against Ms. Vella and Grand Lake based on its finding that Ms. Vella and Grand Lake were not "state actors." In making its decision, the district court relied on *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996), in which this court held a private therapist was not a "state actor" in circumstances similar to this case. The district court acted in response to a Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, Motion for Summary Judgment. It is not clear from the

---

[1] Ms. James says Ms. Vella's decision to commit her was intended as punishment. Ms. Vella claims she was concerned because Ms. James appeared to be unable to take precautions to protect herself from her abusive husband. Resolution of this question is immaterial to our decision in this case because the motives underlying Ms. Vella's actions are irrelevant to whether she was a state actor.

[2] In addition, Ms. James inexplicably alleged a Fifth Amendment violation. The restrictions found in the Fifth Amendment do not apply to the defendants in this case (*i.e.*, they are not federal actors).

order whether the district court based its decision on the motion to dismiss or the motion for summary judgment. Because the district court discussed facts not in the complaint, we will assume it was a grant of summary judgment.

We review the grant of summary judgment *de novo*, applying the same well-recognized legal standard used by the district court pursuant to Federal Rule of Civil Procedure 56(c). *See Kaul*, 83 F.3d at 1212. We examine the record in the light most favorable to the nonmoving party. *See Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995).

In order to bring a § 1983 claim, a plaintiff must demonstrate that the defendant acted "under color of any statute, ordinance, regulation, custom, or usage, of any State" to deprive the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. As mentioned above, Ms. James' claim against Ms. Vella was premised on a deprivation of rights guaranteed by the Fourteenth Amendment.[3] "Because

---

[3] The Fourteenth Amendment of the Constitution states, in part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. This Amendment embodies three protections:

the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).

At the time of the incident in question, Ms. Vella was a private therapist working for a private mental health facility; in other words, she was a private individual. "In order to hold a private individual liable under § 1983 for a constitutional violation requiring state action, a plaintiff must show ... that the individual's conduct is 'fairly attributable to the State.'" *Pino* 75 F.3d at 1465 (quoting *Lugar*, 457 U.S. at 937).

In *Pino*, a private therapist notified the police that the plaintiff in that case was acting irrationally and might need to be held for an emergency mental health evaluation. *Pino*, 75 F.3d at 1463-64. The plaintiff in that case was taken by the police to a hospital for evaluation and ultimately admitted against her will. *Id.*

---

(1) a procedural due process protection requiring the state to provide individuals with some type of process before depriving them of their life, liberty, or property; (2) a substantive due process protection, which protects individuals from arbitrary acts that deprive them of life, liberty, or property; and (3) an incorporation of specific protections afforded by the Bill of Rights against the states.

*Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991), *cert. denied*, 502 U.S. 1096 (1992). Ms. James' claims only implicate the first and second protections.

After her release, the plaintiff filed a § 1983 claim against the therapist, among others, for violating her Fourth and Fourteenth Amendment rights. *Id.* at 1464-65. Finding the therapist's conduct did not rise to the level of state action and the therapist "did not exercise 'some right or privilege' or act under a 'rule of conduct' created by state law," this court ruled the therapist was not liable under § 1983. *Id.* at 1465.

On appeal, Ms. James argues *Pino* is distinguishable. She contends Ms. Vella did more than simply advise the police officers of the situation. The City of Pryor Police Department had a policy of transporting patients for emergency detention without question whenever someone from Grand Lake requested assistance. As this was the case, Ms. James argues, Ms. Vella essentially *directed* the officers to take her to the hospital for evaluation, in contrast to the *Pino* case, where the court found the therapist merely *assisted* the police officers in making an independent judgment as to whether the plaintiff in that case needed to be detained for evaluation. *Pino*, 75 F.3d at 1466. Ms. James contends this decision by the City to abdicate its independent judgment to Grand Lake elevates Ms. Vella to the level of a state actor.[4] We disagree.

_____

[4] Ms. James also appears to argue this case is distinguishable from *Pino* because of the reprehensibility of Ms. Vella's actions. Specifically, Ms. James alleges Ms. Vella regularly threatened patients and lied in order to get Ms. James committed. These allegations have nothing to do with deciding whether Ms. Vella's behavior constitutes

In determining whether a private individual can violate the Fourteenth Amendment, courts look at two conditions.

> First, the "deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." ... Second, the private party must have "acted together with or ... obtained significant aid from state officials" or engaged in conduct "otherwise chargeable to the State."

*Wyatt v. Cole*, 504 U.S. 158, 162 (1992) (quoting *Lugar*, 457 U.S. at 937). Both conditions must be met for a private individual to be liable, and the general presumption is against extending liability. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for [§] 1983 purposes.").

We do not believe Ms. James can get past the first condition. As noted above, this Circuit has found that a private therapist in a similar case "did not exercise 'some right or privilege' or act under a 'rule of conduct' created by state law" by calling the police and advising them to detain a woman for an emergency detention evaluation. *Pino*, 75 F.3d at 1465. Although the police policy of declining to exercise independent judgment adds a new element, it does not change the result. Because the policy was created by the City, not the State, it

state action for Fourteenth Amendment and § 1983 purposes.

-10-

only implicates the aspect of the first condition involving a rule of conduct imposed by a person for whom the State is responsible. Therefore, the question we must resolve is whether the City's policy created a rule of conduct, distinguishing this case from our decision in *Pino*.

The Supreme Court has made it clear that the rule of conduct must dictate the result of the private individual's decision to elevate the individual to a state actor. *See Blum v. Yaretsky*, 457 U.S. 991, 1009 (1982) ("The decisions made by the [defendant] ... were framed in accordance with professional canons of ethics, rather than dictated by any rule of conduct imposed by the State."); *Rendell-Baker v. Kohn*, 457 U.S. 830, 844 (1982) (White, J., concurring) ("For me, the critical factor is the absence of any allegation that the employment decision was itself based upon some rule of conduct or policy put forth by the State."). There is no suggestion here that Ms. Vella's decision to send Ms. James for an emergency detention evaluation was dictated by or based on the City's policy of not questioning emergency detention requests by Grand Lake authorities. In fact, the allegation is that the decision was based on a personal vindictiveness. The City's policy may have made it easier for Ms. Vella to subject Ms. James to detention, but it certainly did not direct her decision in any way.

Furthermore, another section of *Pino* than that discussed by Ms. James dictates that we find Ms. Vella not to be a state actor. In *Pino*, this court found a private physician working in a private hospital, who certified an individual for involuntary commitment pursuant to a state statute, and whose actions directly lead the police to detain the individual, was not a state actor for § 1983 purposes. *Pino*, 75 F.3d at 1466-67. If a doctor's certification of a patient for transport to a hospital for involuntary commitment (certainly more than mere advice) does not constitute state action, we do not see how a therapist's request for transportation of a patient to a hospital for an examination to determine if involuntary commitment is warranted rises to that level, regardless of police policy.

Our decision in *Pino* controls this claim. Ms. Vella "did not exercise 'some right or privilege' or act under a 'rule of conduct' created by state law." *Pino*, 75 F.3d at 1465. We affirm the district court's dismissal of the claim against Ms. Vella.

For the same reasons, Grand Lake is not a state actor for § 1983 purposes. We affirm the district court's dismissal of the claim against Grand Lake.

***The claims against Officers Greninger and Humphrey and the City of Pryor***

On July 10, 1997, the district court granted a motion for summary judgment filed by Officers Greninger and Humphrey and the City of Pryor. The court determined the officers were "entitled to summary judgment on their qualified immunity defense because [Ms. James] has failed to allege facts sufficient to show that the police officers violated any of plaintiff's constitutional rights." The court found that while the officers' actions may have constituted technical violations of state law, they did not deny Ms. James due process of law. In addition, the district court determined Ms. James failed to show the officers acted with the necessary reckless intent or deliberate indifference to her liberty interests.

Public officials are entitled to qualified immunity from § 1983 claims if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We apply special rules in reviewing a grant or denial of summary judgment when a defense of qualified immunity has been raised. *See Pino*, 75 F.3d at 1467. "'In analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of [the] defendant's

actions.'" *Id.* (quoting *Gehl Group v. Koby*, 63 F.3d 1528, 1533 (10th Cir. 1995)).  On review of grants of summary judgment, we apply the *de novo* standard mentioned earlier.

Citing *Pino*, Ms. James argues the appropriate standard for determining whether the officers have qualified immunity in this case is whether they had probable cause to believe an emergency detention was necessary.  Because Officers Greninger and Humphrey did not have probable cause to detain her, Ms. James' argument goes, their conduct constituted "deliberate indifference," vitiating their qualified immunity protections.  There is a problem with the probable cause standard advanced by Ms. James:  it applies to allegations of Fourth Amendment violations, *see Pino*, 75 F.3d at 1467-68, whereas Ms. James alleged Fourteenth Amendment violations.  In her Reply Brief, Ms. James provides five reason why this court should consider her Fourth Amendment claim.  All lack merit.[5]  The district court made its decision based on Ms. James'

---

[5] First, Ms. James argues the Fourth Amendment claim was included in a Pretrial Order.  As this case never went to trial and no pretrial conference was held, the Pretrial Order was never entered by the district court.  *See* Fed. R. Civ. P. 16(e).  Therefore, it does not control.  Second, Ms. James contends the allegations in her Complaint are sufficient to support a Fourth Amendment violation.  This is irrelevant; just because the facts alleged in a complaint would support a claim does not mean the claim has been made.  Third, Ms. James argues she used the *Pino* case in her brief to the district court on this issue.  The case did not apply to her due process arguments then and does not apply now.  Fourth, Ms. James contends the defendants "argue[d] the Fourth Amendment in their Brief to the Trial Court."  This is not true.  In their brief, the defendants stated:

allegation of a Fourteenth Amendment due process violation – not a Fourth Amendment unlawful seizure violation. We will not read a Fourth Amendment claim into the complaint at this stage.

The Fourteenth Amendment provides both procedural due process and substantive due process protections. *See County of Sacramento v. Lewis*, ___ U.S. ___, 118 S. Ct. 1708, 1713 (1998). The procedural due process protection requires "the state to provide individuals with some type of process before depriving them of their life, liberty, or property." *Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991), *cert. denied*, 502 U.S. 1096 (1992). The substantive due process protection prohibits arbitrary acts by the state that deprive individuals of their life, liberty, or property. *Id.* The liberty interest is clearly the one implicated by this case. It is unclear, however, whether Ms. James intended her claims to be based on the procedural or substantive protection, so we will address each in turn.

---

"Unlike the plaintiff in *Pino*, James has not asserted a Fourth Amendment claim.... Thus, the 'probable cause' analysis from *Pino* is not applicable to this case." Despite their inclusion of an alternative argument, the defendants made it perfectly clear they did not believe Fourth Amendment analysis applied to this case. And fifth, Ms. James argues this court should consider her Fourth Amendment claim because it remains city policy to rely on Grand Lake for a determination of whether an emergency detention is appropriate. The court can discern no cogent point in this last argument.

Procedural due process requires a two-step analysis. First, the court must determine if the plaintiff has been deprived of an interest in life, liberty, or property. Second, the court must determine how much process is due in light of that deprivation. We do not get beyond the first step.

The Supreme Court has ruled that "mere lack of due care by a state official may [not] 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment." *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Section 1983 was not intended to replace state tort law actions. *See Webber v. Mefford*, 43 F.3d 1340, 1343 (10th Cir. 1994). For this reason, more than mere negligence is required for liability. Reckless or deliberate intent on the part of the government official is required to give rise to a Fourteenth Amendment violation actionable under § 1983. *Id.* "[R]eckless intent is established if the actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." *Medina v. City & County of Denver*, 960 F.2d 1493, 1496 (10th Cir. 1992). "Deliberate indifference requires 'a higher degree of fault than negligence, or even gross negligence.'" *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1495 (10th Cir. 1990)).

Ms. James contends the officers acted with deliberate indifference to her constitutional rights by transporting her without making an independent evaluation of her condition and without the proper paperwork. We disagree. The district court was correct in finding the officers did not act with the requisite intent. "[A]n official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of [the plaintiff's] constitutional rights." *Berry*, 900 F.2d at 1496. Even assuming the actions of the officers were not in strict compliance with all the requirements of the emergency detention statute, their actions did not rise to the level of disregarding a known or obvious risk likely to result in a violation of Ms. James' constitutional rights. Both a mental health professional and a doctor told the officers, directly or indirectly, Ms. James needed to be held and transported pursuant to the emergency detention act. We will not require officers to suspect the motives of health care professionals to challenge professional medical determinations. The officers simply were not disregarding a known or obvious risk by deferring to the judgment of the health professionals. Therefore, their actions did not constitute a deprivation of Ms. James' Fourteenth Amendment right to due process.

Ms. James' claim that the officers violated her substantive due process

-17-

rights cannot stand. Because the Supreme Court is reluctant to expand the range of substantive due process, "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Sacramento*, ___ U.S. at ___, 118 S. Ct. at 1714 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (alteration in original). Accordingly, this Circuit has ruled claims that an individual has been unreasonably detained and transported in the involuntary commitment context must be brought under the Fourth Amendment. *Pino*, 75 F.3d at 1469. Even if Ms. James had stated her claims properly, her allegations would not rise to the "shocks the conscience" standard articulated by the Supreme Court for substantive due process claims. *See Sacramento*, ___ U.S. at ___, 118 S. Ct. at 1716.

For these reasons, we affirm the district court's resolution of the claims against Officers Greninger and Humphrey.

For the reasons above, the district court also correctly granted summary judgment in favor of the City of Pryor.

-18-

***The claims against Dr. Delong and the Medical Center***

On May 15, 1997, the district court granted a motion for summary judgment in favor of Dr. Delong based on its finding that the doctor was not a state actor for § 1983 and Fourteenth Amendment purposes. On review, we apply the *de novo* standard discussed earlier.

Dr. Delong is a private physician working at a private hospital. As we mentioned above, a plaintiff must demonstrate the defendant's conduct is fairly attributable to the State to establish liability under § 1983 for a constitutional violation requiring state action. *Pino* 75 F.3d at 1465. The district court's conclusion was premised on this court's decision in *Pino*. In *Pino*, we held: "A private physician who certifies a person for purposes of [the state involuntary commitment statute] is not subject to § 1983 liability simply because a state police officer responds by transporting or detaining that person." *Id.* at 1466.

Ms. James argues the *Pino* rule does not protect Dr. Delong from liability because of his particularly "egregious" actions (*e.g.,* never examining Ms. James and signing a document partially filled out by another person). Counsel for Ms. James does not make it clear why the egregiousness of his actions should have any effect on Dr. Delong's status or non-status as a state actor. Ms. James also

argues Dr. Delong is a state actor because he was acting jointly with Ms. Vella. As Ms. Vella was not a state actor, this makes no difference. Because we see no reason why our decision in *Pino* should not control in this case, we affirm the district court's summary judgment in favor of Dr. Delong.

On February 27, 1997, the district court granted a motion to dismiss filed by the Medical Center based on its finding that the facts, as stated in the complaint, failed to establish a basis for relief. We review *de novo* a dismissal for failure to state a claim upon which relief can be granted. *See Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1490 (10th Cir. 1997).

Ms. James argues that the Medical Center can be held liable for the acts of Dr. Delong based on its failure to supervise or train him. The Medical Center is a private entity. For the reasons we gave in upholding the dismissal of the claim against Dr. Delong, we affirm the district court's disposition of the claim against the Medical Center.[6]

---

[6] In this section, counsel for Ms. James argues the Medical Center had a duty to train Dr. Delong and that it was obligated to comply with the provisions of the emergency detention statute because Dr. Delong and the hospital regularly conducted emergency detention evaluations. Counsel supports this position with a claim that Dr. Delong had performed 50-100 of these evaluations. Reference to the portion of Dr. Delong's deposition, to which counsel cites in support of this statement, demonstrates this to be a

### *The claims against Drs. Fermo and Southern*

The district court awarded summary judgment in favor of Dr. Fermo. The district court determined Dr. Fermo was entitled to qualified immunity because Ms. James' allegations did not rise to the level of constitutional deprivation, because the doctor's actions did not demonstrate reckless intent, and because the violation claimed by Ms. James was not contrary to "clearly established law." In a separate order, the district court dismissed Ms. James' claim against Dr. Southern, finding he was entitled to qualified immunity. The district court determined Dr. Southern's actions may have been negligent, but they did not rise to the level of constitutional deprivation. In addition, the district court held Dr. Southern's actions were not a violation of clearly established law.

As discussed above, a public official is entitled to qualified immunity if his actions did not "violate clearly established statutory or constitutional rights of

---

gross misstatement:

> Q. Since 1987, give me a ballpark idea of the number of emergency
> detention orders that you've had dealings with.
> A. I couldn't – I couldn't put a number on it.
> Q. 50, 100?
> A. I couldn't say.

In other words, counsel is supporting his argument with reference to a number he made up.

which a reasonable person would have known." *Harlow*, 457 U.S. at 818. These two doctors were working for the state and were acting in their official capacity during their interactions with Ms. James, so there is no dispute that they are public officials who are entitled to raise a qualified immunity defense. When reviewing a grant of summary judgment based on a defense of qualified immunity, we first look to see if the plaintiff has asserted the violation of a constitutional right, and then determine if that right was clearly established at the time of the defendant's actions. *Pino*, 75 F.3d at 1467. We apply the summary judgment *de novo* standard mentioned earlier.

It is unclear whether Ms. James intended her claims against the doctors to be based on the procedural or substantive guarantees of the Fourteenth Amendment, so we will look at each in turn.

As mentioned in the section dealing with the claims against the officers, when considering whether a violation of an individual's procedural due process rights occurred, the court must first determine if the plaintiff has been deprived of an interest in life, liberty, or property, and then determine how much process is due in light of that deprivation. As with our analysis concerning the officers, we need not get beyond the first step.

Reckless or deliberate intent on the part of the government official is required to give rise to a deprivation of a protected interest. *See Webber*, 43 F.3d at 1343. We agree with the district court that the actions of the doctors do not rise to this level.

Ms. James argues there was nothing in Dr. Fermo's evaluation notes to justify his certification to a reasonable certainty that without treatment she would be unable to protect herself from injury. The evaluation notes reveal Dr. Fermo knew Ms. James had a lengthy history of depression, she was abused by her husband (by putting a knife to her neck, putting a gun to her head, and kicking her) and was fearful of further abuse, and she got panicky to the point where she was unable to cope with being alone. In addition, Dr. Fermo had the Licensed Mental Health Professional's Statement signed by Dr. Delong and the Grand Lake Referral to Eastern State Hospital filled out by Ms. Vella. We are not qualified to determine whether Dr. Fermo's certification was supportable professionally given the results of his evaluation, but in light of the items mentioned above, we are confident his actions did not rise to the level of "reckless intent" or "deliberate indifference."

On appeal, Ms. James argues that because Dr. Southern certified Ms. James

for emergency detention despite the favorable results of his evaluation, filed a Petition for Protective Custody and Treatment containing false statements, and intentionally delayed before filing the Petition, he is not entitled to qualified immunity. We agree with the district court that such allegations do not rise to the level of a constitutional deprivation. The delay in filing the Petition was approved by a judicial officer. The alleged false statements stem from a form statement signed by Dr. Southern. Counsel does not identify these false statement in his brief, but a review of the complaint shows they stem from Ms. James' contention that she did not meet the requirements for detention. Dr. Southern's certification that Ms. James met the standard for emergency detention, even if not properly supported by documentation, does not rise to the level of reckless or outrageous conduct. A disagreement over the basis of a medical evaluation does not suffice to support an allegation of reckless or outrageous conduct.

Any claim against the doctors based on a violation of the Fourteenth Amendment substantive due process protection fails because Ms. James' allegations do not rise to the "shocks the conscience" standard articulated by the Supreme Court for substantive due process claims. *See Sacramento*, ___ U.S. at ___, 118 S. Ct. at 1716.

-24-

For the reasons above, the district court's dispositions of the claims against Dr. Fermo and Dr. Southern are affirmed.

Before concluding, we must discuss one unfortunate matter. We are concerned about two particularly egregious mischaracterizations of the record by Ms. James' counsel. One is counsel's repeated statement that Dr. Delong had performed 50-100 emergency detention evaluations. The record shows this number to be counsel's own unconfirmed estimate. The other is counsel's statement, in support of his argument that a Fourth Amendment claim exists, that the City and the officers "argue[d] the Fourth Amendment in their Brief to the Trial Court, contending that under *Pino* ... the actions of the police officers were reasonable." That brief makes perfectly clear that the City and the officers did not believe the Fourth Amendment applied and that the section of the brief quoted by counsel was made in the alternative.

Neither of these characterizations were even close to being arguably true and both were material to counsel's arguments. We find this troubling, to say the least. Therefore, pursuant to Federal Rule of Appellate Procedure 46(c), appellant's counsel shall show cause why this court should not impose appropriate disciplinary action for these apparent attempts to mislead. Counsel's response

-25-

shall not exceed ten pages and shall be filed with the Clerk of this court within fourteen days of the issuance of this order.

Section 1983 was never intended to create a federal tort scheme to right all wrongs. If the facts alleged by Ms. James are true, this is a truly disturbing case. However, this decision concerns only whether these defendants are liable pursuant to § 1983, which is a wholly separate question from whether there are any state law remedies available or whether the defendants deserve to be liable. If these allegations are true, we can only hope the wrongs against Ms. James will be redressed in an appropriate forum. The decisions of the district court are **AFFIRMED**.

Entered by the Court:

**WADE BRORBY**
United States Circuit Judge