PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 7/10/96**

TENTH CIRCUIT

_____

WESLEY V. BATEMAN,                     )
                                       )
          Plaintiff-Appellant,         )
                                       )
     v.                                )          No. 95-4041
                                       )
CITY OF WEST BOUNTIFUL,                )
a political subdivision of the         )
State of Utah; CARL JOHNSON,           )
Mayor,                                 )
                                       )
          Defendants-Appellees.        )

_____

Appeal from the United States District Court
for the District of Utah
(D.C. No. 94-NC-126-B)

_____

David O. Black of Black, Stith & Argyle, P.C., Salt Lake City, Utah, for Plaintiff-Appellant.

David L. Church of Blaisdell & Church, Salt Lake City, Utah for Defendants-Appellees.

_____

Before **BALDOCK**, **EBEL**, and **BRISCOE**, Circuit Judges.

**EBEL**, Circuit Judge.

Plaintiff-Appellant Wesley V. Bateman ("Bateman") brought this 42 U.S.C. § 1983 action against the City of West Bountiful ("City"), and its Mayor, Carl Johnson, asserting a Fifth Amendment takings claim, due process and equal protection violations, and an equitable estoppel claim under Utah law. The district court held that these claims were not ripe for adjudication because Bateman had neither received a final administrative determination concerning his property, nor had he sought and been denied just compensation from the City under Utah's inverse condemnation procedure. The district court thus dismissed Bateman's claims for lack of subject matter jurisdiction. Bateman now appeals the dismissal of his complaint and we affirm.

## I.

In 1973, Bateman purchased a residential lot located at 883 West 400 North in the City of West Bountiful, Utah.[1] The lot was one of several one-acre lots located on 400 North that were granted conditional use zoning by the City. The conditional use zoning scheme allowed property owners to subdivide their lots into three 1/3-acre portions, with

---

[1] These facts largely come from the plaintiff's complaint, which is admitted for the most part by the defendants.

one residence permitted on each portion. Because only one of the three 1/3-acre portions had direct access to 400 North, however, a twelve foot-wide right-of-way provided ingress to, and egress from, the middle and rear portions of the lots. Moreover, because the right-of-way was necessary to provide access to the other two portions of the lot, the normal setback and side yard requirements were waived under the conditional use zoning scheme.

When Bateman purchased his lot in 1973, the front third of the lot (with the frontage on 400 North) came with a residential structure in place. Within a few years, Bateman drew up plans to build a house, garage and workshop on the middle portion of the lot. He obtained a building permit from the City and paid the necessary fees by check. Pursuant to the common and accepted practice at the time, Bateman did not conduct any engineering studies, but rather submitted a plot plan to the City on yellow note paper. Over the next five years, the buildings were constructed in stages. The City was aware of the construction, and periodically sent building inspectors to Bateman's lot. The structures were completed in approximately 1980.

In 1992, Bateman attempted to sell the middle portion of his lot, together with the structural improvements, and listed them with a real estate agent. However, a City officer in the meantime had recorded a Certificate of Noncompliance ("Certificate") with respect to Bateman's property in the county recorder's office. This Certificate indicated that Bateman's property was not in compliance with the setback and side yard requirements of

the West Bountiful building ordinance. The Certificate, which is still on file in the county recorder's office, effectively prevents Bateman from selling the subdivided portion of his lot. It also has prevented Bateman from refinancing his property.

Rather than seeking a variance from the City board of adjustment, as was permitted under Utah law, Bateman filed this suit in the United States District Court for the District of Utah, pursuant to 42 U.S.C. § 1983. In his complaint, Bateman alleged that the City had waived the setback and side yard requirements by granting him a building permit pursuant to the conditional use zoning scheme. Bateman further alleged that the setback and side yard requirements as applied to his lot did not substantially advance a legitimate state interest or promote health, safety, or the public welfare. Bateman's complaint asserted a claim under the Fifth Amendment Takings Clause, and claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Bateman also asserted that the City was estopped under state law from enforcing the setback and side yard requirements. The City filed a motion to dismiss Bateman's complaint on the ground that the matter was not ripe for adjudication in federal court. The district court granted the City's motion and dismissed the complaint without prejudice. This appeal followed.

## II.

The issue whether a claim is ripe for review bears on the court's subject matter jurisdiction under Article III of the Constitution. New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1498-99 (10th Cir. 1995). Accordingly, a ripeness challenge, like most other challenges to a court's subject matter jurisdiction, is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). Id. at 1499. Ripeness is a question of law, which we examine de novo. Powder River Basin Resources Council v. Babbitt, 54 F.3d 1477, 1483 (10th Cir. 1995). The ripeness inquiry requires the court to evaluate "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967). Because neither of these factors support the exercise of jurisdiction over Bateman's claim, we affirm the district court's order dismissing the complaint without prejudice.

## A.

The district court, relying on Williamson Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985), held that the takings claim was premature because Bateman failed to appeal the issuance of the Certificate to the City board of adjustment, as was clearly permitted under Utah law. In Williamson, the plaintiff filed a suit similar to Bateman's asserting that a county zoning board's refusal to approve a development plan effected a taking of its property in violation of the Fifth Amendment. Relying on a number of

earlier decisions, the Court in Williamson held that a regulatory takings claim is not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id. at 186-87 (citing Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S 264 (1981); Agins v. City of Tiburon, 447 U.S. 255 (1980); Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978)). Applying this general rule, the Court concluded that because the plaintiff had not sought a variance from the County Board of Zoning Appeals, there was no "final decision" for the Court to review, and plaintiff's claim was therefore not ripe. 473 U.S. at 188, 190.

As in Williamson, Bateman's failure to seek review of the City's action under the procedures authorized by state law renders his takings claim unripe. Under the Utah Municipal Land Use Code, a municipal subdivision of the State may enact a zoning ordinance and divide the territory over which it has jurisdiction into various zoning districts. Utah Code Ann. §§ 10-9-401 to 405. The Land Use Code also directs each municipality adopting such a zoning ordinance to appoint a board of adjustment. Utah Code Ann. § 10-9-701. The board of adjustment has the authority to hear and decide: (1) appeals from decisions applying the zoning ordinance; (2) special exceptions to the terms of the zoning ordinance; and (3) variances from the terms of the zoning ordinances. Utah Code Ann. § 10-9-703. The board of adjustment also is empowered to make determinations regarding the existence of "nonconforming uses" if that authority is

delegated to it by the legislative body.  Id.  Thus, under Utah law, the board of adjustment has the authority to make a final determination regarding Bateman's property.  Compare Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1575 & n.9 (11th Cir. 1989) (holding that plaintiff was not required to seek a variance from either the zoning commission or the local board of zoning adjustment because neither body had the authority to grant the necessary variance).

The City also has taken no affirmative enforcement action against Bateman in connection with the Certificate of Noncompliance.  The Certificate of Noncompliance is merely a preliminary determination made by a functionary zoning inspector that an existing land use is not in compliance with the current zoning regulations.  A Certificate prompts a property owner such as Bateman to request a variance or waiver, but is not itself a conclusive determination of the property's status.  Thus, any zoning action regarding Bateman's property cannot be final until Bateman seeks a determination from the board of adjustment, as only then will the board of adjustment have had the opportunity to decide whether Bateman enjoys a valid nonconforming use, or whether some other legitimate justification for granting a variance exists.  See, e.g., Bannum, Inc. v. City of Louisville, 958 F.2d 1354, 1363 (6th Cir. 1992) (holding that the city had reached a "final determination" regarding plaintiff's property only after plaintiff unsuccessfully applied to the board of zoning adjustments for a nonconforming use variance).

Bateman argues that he should not be required to seek review from the board of adjustment prior to filing his § 1983 action because § 1983 does not require a litigant to first exhaust administrative remedies. See Patsy v. Florida Bd. of Regents, 457 U.S. 496, 516 (1982). This same argument was rejected in Williamson: "The question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable." Williamson, 473 U.S. at 192. Whereas exhaustion generally refers to the requirement that a litigant resort to available administrative or judicial procedures prior to filing a federal lawsuit, the finality requirement seeks to ensure that the issues and the factual components of the dispute are sufficiently fleshed out to permit meaningful judicial review. See Lujan v. National Wildlife Federation, 497 U.S. 871, 891 (1990) (a controversy is not ripe for judicial review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation"); Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967) (explaining that the "basic rationale" of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements" and to eliminate "judicial interference until an administrative decision has been formalized and its effects felt in a concrete way"). Given the unusually fact-specific nature of the constitutional inquiry, the finality requirement assumes even greater significance in a regulatory takings case. See, e.g.,

MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 348 (1986) ("A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes."); Williamson, 473 U.S. at 190 ("Our reluctance to examine takings claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause."). Thus, while we agree that Bateman need not exhaust his available administrative remedies prior to filing a § 1983 action, this fact does not excuse him from first obtaining a final decision from the board of adjustment regarding how it will apply the zoning ordinance to his property.

Undeterred, Bateman argues that his case is distinguishable because, unlike the plaintiff in Williamson, he seeks a remedy for the violation of a property right that has already been granted--i.e., his original building permit. However, this fact alone does not distinguish Bateman's case from Williamson; Bateman still cannot point to a final, reviewable action by the City that deprives him of a federally protected right. Rejecting a similar argument, the Williamson Court reasoned as follows:

> [R]esort to the procedure for obtaining variances would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed. The Commission's refusal to approve the preliminary plat does not determine that issue; it prevents respondent from developing its subdivision without obtaining the necessary variances, but leaves open the possibility that respondent may develop the subdivision according to its plat after obtaining the variances.

473 U.S. at 193-94. Similarly, the Certificate of Noncompliance issued to Bateman does not represent a conclusive determination by the City that he must abide by the setback and

side yard requirements of the zoning ordinance; rather, it places Bateman on notice that his property does not comply with current requirements, and "leaves open the possibility" that he may maintain his property in its present state after obtaining a variance from the board of adjustment. Thus, the mere issuance of a Certificate of Noncompliance does not conclusively determine whether Bateman has been denied all reasonable beneficial use of his property, and therefore is not a final, reviewable decision. Williamson, 473 U.S. at 194.

**B.**

Even if we were to accept Bateman's argument that the City's issuance of the Certificate of Noncompliance was a "final decision," Bateman's takings claim would still not be ripe for review because he has not sought compensation from the City pursuant to Utah's inverse condemnation law. It is well settled that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson, 473 U.S. at 195; see also Clajon Prod. Corp. v. Petera, 70 F.3d 1566, 1575 (10th Cir. 1995) ("[I]f [the state's] inverse condemnation procedure were available to Plaintiffs, this action would not be ripe for consideration, and thus, we would lack jurisdiction over Plaintiffs' Takings Clause claim."). Because the Fifth Amendment does not require compensation to be paid before a deprivation occurs, Ruckelshaus v.

-10-

<u>Monsanto Co</u>, 467 U.S. 986, 1016 (1984), a "taking" is not complete until the State fails to provide "just compensation" for the property. <u>Williamson</u>, 473 U.S. at 195.

Under Utah law, a property owner may bring an inverse condemnation action whenever private property is taken or damaged for public use without a formal exercise of the State's eminent domain power. <u>Farmers New World Life v. Bountiful City</u>, 803 P.2d 1241, 1243 (Utah 1990). A property owner's cause of action for inverse condemnation is provided by Article I, section 22 of the Utah Constitution.[2] This constitutional provision is self-executing, <u>see</u> <u>Colman v. Utah State Land Bd.</u>, 795 P.2d 622, 635 (Utah 1990), and the Utah legislature has waived its governmental immunity for claims of inverse condemnation, <u>see</u> Utah Code Ann. § 63-30-10.5(1).[3] Additionally, the Utah Supreme Court has interpreted Article I, section 22 of the state constitution as allowing a suit for inverse condemnation when the effect of an ordinance is to take or damage private property at a level that gives rise to a constitutional claim.[4] <u>See</u> <u>Colman</u>, 795 P.2d at 627. Thus, because the State of Utah has provided a procedure for obtaining compensation for a taking of private property for public use, and because the Fifth Amendment "requires

---

[2] Article I, section 22 of the Utah Constitution reads: "Private property shall not be taken or damaged for public use without just compensation."

[3] Section 63-30-10.5(1) of the Utah Code provides that "immunity from suit of all governmental entities is waived for the recovery of compensation from the governmental entity when the governmental entity has taken or damaged private property for public uses without just compensation."

[4] Because we dispose of this case on ripeness grounds, we do not address the merits of whether the state zoning action here would trigger a valid constitutional claim.

that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action," Williamson, 473 U.S. at 194 n.13, Bateman's failure to avail himself of the procedure renders his claim premature.

## C.

Bateman's due process and equal protection claims stand on no firmer jurisdictional footing. The Tenth Circuit repeatedly has held that the ripeness requirement of Williamson applies to due process and equal protection claims that rest upon the same facts as a concomitant takings claim. See Rocky Mountain Materials & Asphalt, Inc. v. Board of County Comm'rs, 972 F.2d 309, 311 (10th Cir. 1992) (procedural due process); J.B. Ranch, Inc. v. Grand County, 958 F.2d 306, 309-10 (10th Cir. 1992) (same); Miller v. Campbell County, 945 F.2d 348, 352-353 (10th Cir. 1991) (substantive and procedural due process), cert. denied, 502 U.S. 1096 (1992); Landmark Land Co. of Oklahoma, Inc. v. Buchanan, 874 F.2d 717, 722 (10th Cir. 1989) (equal protection and substantive due process). "[W]e are reluctant in the context of a factual situation that falls squarely within [the Takings Clause] to impose new and potentially inconsistent obligations upon the parties under the substantive or procedural components of the Due Process Clause." Miller, 945 F.2d at 352. The Supreme Court, applying similar reasoning, has rejected substantive due process challenges where the allegedly illegal governmental action was clearly encompassed by some other, more specific, enumerated constitutional right. See

-12-

Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against [excessive force by police], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."); Whitely v. Albers, 475 U.S. 312, 327 (1986) (refusing to consider a Fourteenth Amendment due process claim by a prison inmate for excessive force because the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners" in such cases).

Based on these authorities, we conclude that Bateman's due process and equal protection claims are subsumed within "the more particularized protections of the [Takings] Clause." Miller, 945 F.2d at 352. As a result, Bateman's failure to obtain a final and definitive pronouncement regarding his property renders these ancillary constitutional claims unripe. A contrary holding would render the Supreme Court's decision in Williamson nugatory, as it would enable a resourceful litigant to circumvent the ripeness requirements simply by alleging a more generalized due process or equal protection violation. Accordingly, we hold that plaintiff's due process and equal protection claims are not ripe for review.[5]

---

[5] Bateman does not specifically contest the dismissal of his state law estoppel claim. In any event, once the district court dismissed Bateman's federal claims, it was authorized to dismiss the supplemental state claims as well. See 28 U.S.C. § 1367(c)(3) (permitting district courts to decline supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction"). We

(continued...)

-13-

**III.**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

---

[5](...continued)
therefore find no error in the dismissal of Bateman's state law claim.