**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 27 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

B. WILLIS, C.P.A., INC.,

      Plaintiff-Appellant,

v.

PUBLIC SERVICE COMPANY OF
OKLAHOMA, an Oklahoma
corporation; BURLINGTON
NORTHERN AND SANTA FE
RAILWAY COMPANY, a foreign
corporation,

      Defendants-Appellees.

No. 97-5107
(D.C. No. 96-CV-59-E)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA** and **BALDOCK**, Circuit Judges, and **GREENE**,[**] Senior District
Judge.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    Honorable J. Thomas Greene, Senior District Judge, United States District
Court for the District of Utah, sitting by designation.

The panel previously abated this appeal in deference to related state court eminent domain proceedings which might have obviated or perhaps clarified some of the issues raised in the case. However, timely resolution of the state action has not ensued. After making its way through the Oklahoma appellate courts, that proceeding is now back in the trial court awaiting redetermination.

Upon further review of the record on appeal, the briefs, and the parties' subsequent submissions, the panel concludes that proper grounds for immediate disposition of the appeal are present but have been obscured by the presence of many overlapping/redundant claims which are not ripe for adjudication. For reasons explained below, we affirm the decision of the district court, though we clarify that the dismissal of the bulk of this case, which is dictated by constitutional constraints on subject matter jurisdiction, is without prejudice.

## Background

Oklahoma's statutory scheme for eminent domain, Okla. Stat. Ann. tit 66, §§ 51-66, authorizes railroad corporations (and utilities,      see Okla. Stat. Ann. tit 27, § 7) to take real property by condemnation. The procedure may be outlined in pertinent part by the following steps: (1) the condemnor corporation applies to the district judge, with notice to the landowner, for selection of a three-person commission; (2) the commissioners inspect the property, assess just compensation for the injury involved, and file a report with the clerk of the court, which is

promptly forwarded to interested parties; (3) if the condemnor pays the assessed sum, it may take immediate possession consistent with its proposed use, though all parties retain the right to challenge the commission's report; (4) review may be sought in the district court by filing written exceptions to the report or a demand for jury trial; (5) the district court's final judgment (approving compensation or denying condemnation) is subject to appeal, but such review shall not delay the condemnor's use of the property, if approved, so long as the assessed compensation has been paid.

Defendant Public Service Company of Oklahoma (PSO) commenced an eminent domain proceeding to condemn and acquire an easement over plaintiff's property to build a railroad spur for transporting coal to one of its power plants. After the first three steps of the process were concluded, plaintiff sought review in state court both by exception and jury demand, alleging that the proposed taking was not for a public use nor reasonably necessary for the use claimed. Plaintiff also challenged the amount of compensation assessed. The trial court ruled in favor of PSO, and plaintiff appealed. He also sought interim equitable relief from the Oklahoma Supreme Court, which denied his requests. While the appeal was pending, PSO completed the railroad spur and put it in use (particularly by defendant Burlington Northern Railroad Company (BN), as PSO's licensee). When plaintiff threatened to interfere with the operation, PSO obtained

an injunction against him. Ultimately, the Oklahoma Supreme Court reversed the judgment of condemnation, holding that the trial court had erroneously relieved PSO of the initial burden of proof and compounded that error by denying plaintiff discovery of pertinent materials. See Public Serv. Co. v. B. Willis, C.P.A., Inc., 941 P.2d 995 (Okla. 1997). On remand, the state trial court refused to dissolve the existing injunction against plaintiff's interference with PSO's operation, and the Oklahoma appellate courts have affirmed that ruling. However, the trial court has yet to issue any final decision on the merits of the condemnation.

In the meantime, plaintiff filed these proceedings in federal district court, alleging numerous constitutional claims against PSO under 42 U.S.C. § 1983 and a trespass claim against BN. The district court identified the crux of the case to be plaintiff's assertion that he was constitutionally entitled to a final judicial determination on condemnation before PSO could take possession of the easement over his property. In the district court's view, no federal right was implicated under the circumstances and, consequently, PSO's current possession, and BN's licensed use, was not actionable.

On this appeal, plaintiff continues to argue that the state condemnation proceedings are constitutionally invalid, violating his rights to due process, equal protection, access to the courts, and free speech. He also claims that, as PSO could not have acquired a valid right to possession through such proceedings, BN

has no derivative licensee defense to the trespass claim. Finally, he contends that the state court order enjoining his interference with PSO's operations violates his First Amendment right of free speech. We conclude that most of these claims are not ripe for adjudication, and the remainder lack merit. Accordingly, we affirm the district court's decision dismissing the case.

**Ripeness**

Virtually all of plaintiff's complaints derive, in one way or another, from the eminent domain proceeding prosecuted by PSO. As outlined above, that proceeding affords plaintiff the right to challenge both the justification of PSO's taking and the adequacy of any resulting compensation. See generally Okla. Stat. Ann. tit 66, §§ 51-57. Thus, until that proceeding is concluded, any objections he may have cognizable under the most directly pertinent provision of the federal Constitution--the Just Compensation Clause (JCC)--are not ripe for adjudication and must be dismissed for lack of subject matter jurisdiction under Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186-96 (1985). More to the point here, this ripeness rule encompasses other constitutional claims which fall squarely within the primary purview of the JCC in this context, such as the due process, equal protection, and access-to-courts infirmities plaintiff alleges with respect to the state eminent domain proceeding. See Bateman v. City of West Bountiful, 89 F.3d 704, 709 (10th Cir. 1996)

(collecting numerous Tenth Circuit cases). Thus, pursuit of such closely-related objections must await the ripening of the predominant JCC claim. Id.

However, one condemnation-related claim here clearly falls outside the Williamson bar. In addition to the objections to his own proceeding, plaintiff appears to raise a generalized facial challenge to the state eminent domain scheme itself, for permitting any condemnor to take immediate possession upon payment of an administratively-determined compensation before final judicial resolution of the landowner's objections, see Okla. Stat. Ann. tit 66, § 53(C). While an objection to the taking "as applied to [plaintiff's] property would be unripe [under Williamson ]," such a "facial challenge to the [statutory scheme]" is immediately adjudicable. See Yee v. City of Escondido , 503 U.S. 519, 533-34 (1992).

This evidently was, in fact, the claim addressed by the district court, which held that predeprivation hearings are not constitutionally required in the eminent domain context. We agree. In addition to the authorities the district court discussed, we note the Supreme Court specifically stated in Williamson that "[u]nlike the Due Process Clause . . . the Just Compensation Clause has never been held to require pretaking process or compensation." Williamson , 473 U.S. at 195 n. 14 (citing Ruckelshaus v. Monsanto Co. , 467 U.S. 986, 1016 (1984)); see also J. B. Ranch, Inc. v. Grand County , 958 F.2d 306, 309 & n.4 (10th Cir. 1992) (quoting Williamson and rejecting due process claim based on asserted need for

pretaking hearing in this context as "impos[ing] new and potentially inconsistent obligations" beyond those required by JCC). Indeed, this was a premise for the Williamson Court's ripeness analysis: "[B]ecause the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not 'complete' until the State fails to provide adequate compensation for the taking." Williamson, 473 U.S. at 195; see also Biddison v. City of Chicago, 921 F.2d 724, 727 n.4 (7th Cir. 1991).

This point is obscured somewhat by decisions of the Oklahoma Supreme Court which, while not holding the eminent domain scheme (particularly the immediate-possession provision of § 53(C)) invalid, have broadly stated that "the establishment of the right to condemn is a prerequisite to any right of possession by the condemnor." Town of Ames v. Wybrant, 220 P.2d 693, 695 (Okla. 1950) (citing Watkins v. Board of Comm'rs, 174 P. 523, 525 (Okla. 1918)). However, a wider view of the case law harmonizes the supreme court's language with its evident acceptance of § 53(C). Thus, the legislative authorization of immediate possession is permissible *in that* such possession *remains subject to review and potential restraint* through the courts' equitable power: "According to Wybrant and Watkins, a public body having the power of condemnation *can be enjoined* from appropriating private property for public use until it has initiated

-7-

condemnation proceedings and had its right to condemn the property finally determined." City of Bartlesville v. Ambler, 499 P.2d 433, 436 (Okla. 1971) (emphasis added); see Wybrant, 220 P.2d at 696 (noting that " *upon proper application and showing* [by the landowner]" the trial court " *could make an order temporarily restraining* the condemnor from taking possession of the land pending final determination of the right to condemn" (emphasis added)); Wrightsman v. Southwestern Natural Gas Co., 46 P.2d 925, 933 (Okla. 1935) (same). Indeed, plaintiff has taken the opportunity to seek equitable relief in the state proceedings; he has just not persuaded the Oklahoma courts that it is warranted in his case. Thus, the state courts' construction and assessment of the eminent domain scheme is consistent with applicable federal precedent, and neither of these bodies of authority support plaintiff's position that the scheme is invalid.

### Freedom of Speech

Plaintiff's First Amendment claim, which challenges a collateral order on a basis substantively independent of the condemnation process itself, appears also to fall outside the Williamson ripeness bar. Compare Landmark Land Co. of Okla., Inc. v. Buchanan, 874 F.2d 717, 723 (10th Cir. 1989) (holding intangible due process right that was substantively distinct from JCC protections was not subsumed under Williamson ripeness rule), with J. B. Ranch, Inc., 958 F.2d at

-8-

309 (holding <u>Williamson</u> applicable to due process claim that fell squarely within compass of JCC protections). However, we hold that dismissal of the claim was warranted in any event.

The target of the claim is the state trial court's order enjoining plaintiff "from directly or indirectly interfering in any manner with the construction, maintenance and operation of [PSO's] railroad spur." Appellants' Supp. App. at 21. There is nothing facially speech-sensitive about this order, nor does plaintiff cite any authority that would support such a claim. Actually, plaintiff is primarily concerned with a contempt proceeding brought to enforce the injunction after this appeal was filed. In that proceeding, which has not been concluded, PSO seeks to hold plaintiff in contempt for sending a letter to BN admonishing that, in light of the Oklahoma Supreme Court's reversal of PSO's condemnation order, plaintiff "is restoring [his] fence line around [the disputed easement] and posting 'NO TRESPASSING' signs." <u>Id.</u> at 22. Whether plaintiff has a cognizable claim under the First Amendment on this basis is not a question properly before this panel.

**Trespass**

The district court explained that its rejection of plaintiff's constitutional challenges to the eminent domain proceedings mooted any remaining claims and, accordingly, dismissed the entire case. As plaintiff recognizes, his claim against

BN for trespass obviously stands or falls with the legitimacy of the eminent domain proceeding from which the railroad derives its status as licensee. Since any further challenges to that proceeding are not currently ripe for adjudication, the district court's dismissal of the action should be affirmed.

## State Proceedings - Status Reports

Status reports submitted by plaintiff reflect some unfavorable rulings issued in the ongoing eminent domain proceedings. In particular, plaintiff complains of the Oklahoma Supreme Court's March 22, 1999 denial of his mandamus petition seeking to disqualify the state trial judge, and the May 4, 1999 denial of certiorari in his interlocutory appeal from the trial court's refusal to dissolve the order enjoining interference with PSO's operations. For the same reasons expressed above in connection with plaintiff's challenge to the eminent domain proceeding as a whole, these particular objections to specific rulings therein are not ripe for consideration. Further, if a particular ruling were somehow sufficient to give rise to a distinct, immediately actionable constitutional wrong, at this point such a claim would most appropriately be brought in district court, not interjected into this pre-existing appeal.

## Conclusion

Accordingly, we affirm the district court's dismissal of this action. We clarify, however, that the disposition of plaintiff's numerous unripe claims, based on the lack of subject matter jurisdiction, is without prejudice. See Bateman, 89 F.3d at 706.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED. All pending motions are denied as moot.

Entered for the Court


Deanell Reece Tacha
Circuit Judge