**MARION COUNTY LANDFILL, INC., and M.S.W., Inc., Plaintiffs,**

v.

**BOARD OF COUNTY COMMISSIONERS OF MARION COUNTY, KANSAS; Jack Bruner, individually and in his official capacity as member of the Marion County, Kansas, County Commission; Robert Hein, individually and in his official capacity as member of the Marion County, Kansas, County Commission; Linda Peterson, individually and in her official capacity as member of the Marion County, Kansas, County Commission, Defendants.**

No. 01–4191–SAC.

United States District Court, D. Kansas.

Oct. 24, 2002.

David P. Calvert, Wichita, KS, Russell L. Mills Law Office of Russell L. Mills, Derby, KS, for Plaintiffs/Counter–Defendants.

James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendants/Counter–Claimants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the plaintiffs' motion to dismiss the defendant Board of County Commissioners' counterclaim or, in the alternative, for an order remanding the case, (Dk. 4); the defendants' motion to dismiss the plaintiffs' complaint for failure to state a claim upon which relief can be granted (Dk. 13); and the plaintiffs' motion to dismiss the defendant Board of County Commissioners' counterclaim on grounds of res judicata and collateral estoppel (Dk. 16). The defendants' motion to dismiss raises an issue that decisively goes to this court's subject matter jurisdiction. Nonetheless, the court will address the plaintiffs' first filed motion to dismiss as it seeks in the alternative an order remanding the case. The court, however, concludes it is without jurisdiction to consider the plaintiffs' other motion to dismiss.

## BACKGROUND

From the parties' memoranda and the numerous attachments, one can see that the history behind this litigation is long and complicated. The court, however, finds the parties' efforts at laying out the background to this case to be marginally helpful. From its review of the pleadings, the attachments and other judicial decisions in related litigation, the court considers the following to be that limited background necessary and relevant to the pending issues upon which the court intends to rule.

In 1974, Tom Grosse owned a quarter section of property and entered into a twenty-year agreement with the Board of County Commissioners of Marion County, Kansas ("Marion County") to provide a sanitary landfill on that property. Grosse obtained from the Kansas Department of Health and Environment ("KDHE") in 1976 a permit to operate a landfill on the quarter section. Tom Grosse died in 1993, and his family formed the plaintiff Marion County Landfill, Inc. ("MCLI") to operate the landfill. On December 12, 1994, MCLI contracted with Marion County to extend the landfill use to October 8, 1996.

Prior to 1992, Grosse's quarter section was not zoned. Zoning regulations adopted by the Marion County Board of County Commissioners became effective December 1, 1992, and they zoned the quarter section as agricultural with a conditional use permit ("CUP") allowing its use as a solid waste landfill. The zoning and CUP occurred without any application from Grosse. "Approximately 115 other CUPs were issued in a similar manner for unincorporated properties with the adoption of the initial zoning regulations in December 1992." *M.S.W., Inc. v. Board of Zoning Appeals of Marion County*, 29 Kan.App.2d 139, 141, 24 P.3d 175 (2001).

On or about October 16, 1995, KDHE notified MCLI that it did not have a permit to operate its landfill and that it needed to take certain steps to comply with state law. A month later, MCLI responded to the KDHE that it was negotiating the sale of the landfill to Browning–Ferris Industries, Inc. ("BFI") and that BFI would obtain the necessary permits upon completion of the sale. In the

following months, there were negotiations between MCLI, Marion County, BFI and KDHE in an effort to bring the landfill into compliance with state law and regulations and to secure an opportunity for BFI to apply for a permit to operate a landfill.

On June 11, 1996, KDHE issued an order authorizing MCLI to operate the landfill facility until October 9, 1996, subject to its compliance with the conditions stated in that order. The order provided also that MCLI's authority to operate the landfill would expire on October 9, 1996.

On September 9, 1996, during an open meeting of the Marion County Board of Commissioners, MCLI representatives stated that a vertical expansion permit application for the current landfill had been completed and that the Board's approval was required before submitting the application to KDHE. The application provided for vertical expansion of the landfill for five years or until BFI began operating its proposed subtitle D landfill. The minutes from the Board's meeting state that MCLI representatives were told "that the proposal for vertical expansion should have been on the table before now as other arrangements were nearing completion for disposal of solid waste and that the proposal would require some thought." *Id.* at 142, 24 P.3d 175. (Dk. 1, Ex. J). Also reflected in the minutes from that Board meeting, the commissioners approved a motion to accept a contract for a solid waste transfer facility with K.C. Development, Inc. and also approved a motion to accept an Interlocal Agreement with the Board of County Commissioners of Harvey County for the disposal of solid waste generated within Marion County at the Harvey County facility through October 9, 2001. (Dk. 1, Ex. J).

"After October 8, 1996, the landfill closed and to date has not received any waste. The October 8, 1996, date coincides with the date when Subtitle D landfill standards took effect and the requirement that in order to continue operations, a landfill was required to have a vertical expansion certificate." 29 Kan. App.2d at 142, 24 P.3d 175. Dated October 9, 1996, a landfill purchase agreement between BFI and MCLI provided that BFI would purchase MCLI's quarter section of property if Marion County issued a CUP-landfill and if KDHE issued a solid waste disposal area operating permit for the quarter section and adjacent property. In November of 1996, the Marion County Planning Commission issued an adverse report on BFI's application for a CUP-landfill. At its meeting on January 27, 1997, the Marion County Board of County Commissioners declined MCLI's request for approval of a construction and demolition permit at the landfill site. It was discussed that the Board was already looking into other options and were working with the Solid Waste Regional Committee.

In 1998, MCLI sold 130 acres of the landfill, specifically that land where there had been no solid waste, to M.S.W., Inc. ("MSW"). The buyer MSW made application to commence a landfill on the purchased land. The application required the County to certify that the zoning was appropriate for a solid waste landfill and that the proposed landfill was consistent with the Marion County Solid Waste Plan. The County did not grant either request for certification.[1] The Marion County Board of Zoning Appeals found that a nonconforming use never existed on the property and that the CUP had expired as it had not been used for six months following October 9, 1996. MSW

---

1. The defendants represent that both requests for certification were denied. (Dk. 14, p. 1). The plaintiffs make conflicting representations on whether the County actually denied their request for certification that the landfill use was consistent with the county's waste management plan. In their memorandum in support of their motion to dismiss (Dk. 5), the plaintiffs represent: "The County Commission refused to find that the landfill was consistent with Marion County Solid Waste Plan. The plaintiff, M.S.W., Inc., appealed that finding to the Marion County District Court and that appeal is pending." (Dk. 5, p. 3). In their response opposing the defendants' motion to dismiss, the plaintiffs represent: "The Defendant, Board of County Commissioners ... refused to certify the Plaintiff['s] ... use of its property as being consistent with ... the Solid Waste Plan on September 9, 1996, and continues to refuse to act on the Plaintiff['s] ... application to this day." (Dk. 23, p. 7, ¶ 19). Despite this confusion, the court is confident that the defendant Board has not granted the plaintiffs' request for certification.

appealed this decision to the state district court which adopted the Board's findings and conclusions and then to the Kansas Court of Appeals which affirmed Board's findings on May 11, 2001.

The plaintiffs filed their action in the District Court of Marion County, Kansas, on November 20, 2001, and the defendants removed the case to federal district court on December 20, 2001. The plaintiff's petition consists of two hundred and fifty paragraphs of allegations totaling more than fifty pages.[2] It asserts the following six claims for relief: (1) breach of contract, (2) breach of contract and restrictive covenant, (3) interference with contract, (4) declaratory judgment, (5) inverse condemnation—civil rights, and (6) estoppel.

## PENDING MOTIONS

The plaintiffs filed a motion to dismiss the defendant Marion County's counterclaim or, in the alternative, to remand (Dk. 4). The plaintiffs argue that the relief sought in Marion County's counterclaim is inconsistent with the settlement agreement between MCLI, MSW and KDHE that was approved by the Marion County District Court. Specifically, the settlement agreement provided that if KDHE obtained judgment against Marion County then MSW agreed to sell soil to Marion County at current market value. In the counterclaim, the defendant Marion County wants a judgment against MSW that determines MSW's interest in the 130 acres to be inferior to the County's interest in enforcing its judgment against MCLI and in utilizing any portion of the 130 acres to comply with the closure order. The plaintiffs argue that the Eleventh Amendment prevents them from filing suit against the State of Kansas for indemnification based on the settlement agreement. Thus, the plaintiffs want the court to dismiss the counterclaim for failure to join an indispensable party or to remand the case to state court so that the State of Kansas can be joined.

The defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that: (1) the official capacity actions against the individual defendant commissioners are redundant to the action brought against the entire Board of County Commissioners; (2) the individual defendant commissioners are entitled to qualified immunity on the claims brought against them in their individual capacity; (3) under K.S.A. 75–6104(i), the defendants are immune from the plaintiffs' state claims; (4) in light of *M.S.W., Inc. v. Board of Zoning Appeals of Marion County,* 29 Kan.App.2d 139, 24 P.3d 175 (2001), the plaintiffs' claims are barred by the doctrine of *res judicata;* (5) plaintiffs' federal claims are barred by their failure to exhaust available state remedies.

## PLAINTIFFS' MOTION TO DISMISS OR REMAND (Dk. 4).

Having filed this motion, the plaintiffs have the burden of persuading the court that dismissal is proper. *Davis v. United States,* 192 F.3d 951, 958 (10th Cir.1999) (citation omitted). Rule 12(b)(7) of the Federal Rules of Civil Procedure authorizes a court to dismiss a claim or counterclaim for failure to join a party pursuant to Rule 19. As the plaintiffs acknowledge, the court must first consider whether the State of Kansas is a necessary and indispensable party. Rule 19(a) provides the first step of the court's three-part analysis of whether a party is necessary:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons

**2.** This complaint is replete with redundant, confusing and disorganized allegations. Reading this complaint is a dizzying proposition that leaves one with only the vaguest notion of what claims actually have been alleged. While the subject matter of this case is certainly not simple, it is not so complex as to justify what has been filed. If this court had found subject matter jurisdiction over this action, it would have ordered the plaintiffs to file a complaint in compliance with Rule 8 of the Federal Rules of Civil Procedure.

already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

Fed.R.Civ.P. 19(a). The second step is for the court to determine whether joinder of the necessary party is feasible. *Citizen Potawatomi Nation v. Norton,* 248 F.3d 993, 997 (10th Cir.2001), *modified on other grounds,* 257 F.3d 1158 (10th Cir.2001). The final step is for the court to determine whether a necessary party that cannot be joined is indispensable:

> Assuming the existence of a person who should be joined if feasible, the only further question arises when joinder is not possible and the court must decide whether to dismiss or to proceed without him. To use the familiar but confusing terminology, the decision to proceed is a decision that the absent party is merely "necessary" while the decision to dismiss is a decision that he is "indispensable."

*Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Rule 19(b) sets forth the standard for determining indispensability:

> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). "Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation.... [A] court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him." *Provident,* 390 U.S. at 118–119, 88 S.Ct. 733.

■ The plaintiffs contend dismissal is required under Rule 12(b)(7) because the State of Kansas is a necessary and indispensable party. The court first examines whether complete relief can be accorded to the existing parties in the State's absence, as required by Rule 19(a)(1). The plaintiffs have not shown that without the joinder of the State of Kansas the plaintiffs or the counterclaimant could not recover the declaratory and pecuniary relief they seek. Looking at Rule 19(a)(2), the court also must determine whether the plaintiffs will be subject to a "substantial risk" of incurring multiple or inconsistent obligations by reason of the State's claimed interest. Fed.R.Civ.P. 19(a)(2)(ii). From the record presented, the settlement agreement does not appear to obligate Marion County to pay MSW for top soil, nor does it appear to obligate KDHE to compensate MSW for any top soil used by Marion County. The absence of the State would not preclude the plaintiffs from obtaining any of their requested remedies nor would it create for the plaintiffs a substantial risk of inconsistent judgments. Thus, the record provides insufficient support for a finding that Kansas is a necessary party under Rule 19(a)(1).

Even assuming the plaintiffs could prove the State was necessary, they would still have to prove the State was indispensable. The Tenth Circuit has explained that a "necessary party can be considered an indispensable party only if, 'in equity and good conscience,' a court should not allow the action to proceed in the party's absence." *Sac and Fox Nation of Missouri v. Norton,* 240 F.3d 1250, 1259 (10th Cir.2001), *cert. denied,* 534 U.S. 1078, 122 S.Ct. 807, 151 L.Ed.2d 693 (2002). The record does not show the potential for prejudice to the plaintiffs to be anything more than minimal. A judgment rendered in the absence of the State would still

be adequate for the plaintiffs. In sum, this Court cannot dismiss Marion County's counterclaim in equity and good conscience solely based on the plaintiffs' expansive reading of the settlement agreement. This consideration outweighs the possible prejudice to the Marion County in pursuing its counterclaim. Therefore, plaintiff's motion to dismiss Marion County's counterclaim pursuant to Fed. R.Civ.P. 12(b)(7) for failure to join necessary or indispensable parties pursuant to Fed. R.Civ.P. 19 or, in the alternative, to remand the entire case is denied.

## DEFENDANTS' MOTION TO DISMISS (Dk. 13)

The defendants' notice of removal specifies this court's subject matter jurisdiction is based on the plaintiffs' federal civil rights claim. (Dk. 1, ¶ 1). The plaintiffs do not dispute the defendants' argument that the plaintiffs' only federal claim of relief is count five. (Dk. 14, p. 9). For their federal civil rights claim, the plaintiffs allege that they had a property interest in continuing to operate a solid waste landfill on the real property based on "both the permit to operate a municipal solid waste landfill use on its property and ... in its contract to sell its real property first to BFI as well as a vested property interest in their conditional use landfill and restrictive covenants." (Dk. 1, Petition, ¶ 160). The plaintiffs allege the defendants "have conspired to deprive the Plaintiffs of the lawful use of and rights to their property without substantive due process or just compensation in violation of the Fifth and Fourteenth Amendments to the United State of America Constitution and in violation of 42 U.S.C. §§ 1983 and 1985." (Dk. 1, Petition, ¶ 164). The plaintiffs also allege that in denying the necessary certification for the landfill permit application and in refusing to determine that the plaintiffs' landfill use of the property was consistent with the Marion County's solid waste plan and zoning the defendants acted arbitrarily and capriciously so as to constitute a taking of the plaintiffs' property in violation of their constitutional rights. (Dk. 1, Petition, ¶¶ 168, 169, and 170).

The defendants argue the plaintiffs' federal claims are not ripe in that they have not exhausted the available state remedy of inverse condemnation. In response, the plaintiffs say the defendants incorrectly analyzed their federal constitutional claims in overlooking their procedural due process claim. The plaintiffs also respond to the argument of ripeness by quoting at length from *Deisher v. Kansas Department of Transportation,* 264 Kan. 762, 958 P.2d 656 (1998), which discusses the state inverse condemnation remedy available under K.S.A. 26–513. Following this quotation, the plaintiffs only argue that count five also alleges a state inverse condemnation claim. From what they have filed, the plaintiffs do not appear to oppose the defendants' arguments on ripeness.

"[W]hether a claim is ripe for review bears on the court's subject matter jurisdiction under Article III of the Constitution." *Bateman v. City of West Bountiful,* 89 F.3d 704, 706 (10th Cir.1996) (citing *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1498–99 (10th Cir.1995)). "[U]nder Article III, a federal court is prohibited from entertaining a case in which the issues are not yet ripe." *Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1241 (10th Cir.2001) (citation omitted). " 'If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.' " *Arnett v. Myers,* 281 F.3d 552, 562 (6th Cir. 2002) (quoting *Bigelow v. Michigan Dept. of Natural Res.,* 970 F.2d 154, 157 (6th Cir. 1992)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded [to state court]." 28 U.S.C. § 1447(c).

In *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." "If a plaintiff has not pursued available state remedies, the case is not ripe because 'the State's action ... is not 'complete' until the State fails to provide

adequate compensation for the taking.'" *Arnett*, 281 F.3d at 562 (quoting *Williamson*, 473 U.S. at 195, 105 S.Ct. 3108). For a regulatory taking claim to be ripe, the plaintiff must show:

> (1) that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue;" and (2) that if the state had a "reasonable, certain and adequate provision for obtaining [just] compensation ... at the time of the taking," just compensation was sought and denied through that procedure.

*Arnett*, 281 F.3d at 562. In other words, a regulatory taking claim is not ripe until the litigant clears the final decision hurdle and the just compensation hurdle. *Reahard v. Lee County*, 30 F.3d 1412, 1415 (11th Cir. 1994), *cert. denied*, 514 U.S. 1064, 115 S.Ct. 1693, 131 L.Ed.2d 557 (1995). This "ripeness requirement of *Williamson* applies to due process and equal protection claims that rest upon the same facts as concomitant takings claim." *Bateman v. City of West Bountiful*, 89 F.3d at 709.

 Kansas law appears to recognize an inverse condemnation action for a taking that results from zoning regulations. *Rau v. City of Garden Plain*, 76 F.Supp.2d 1173, 1176 (D.Kan.1999). The plaintiffs even assert they have alleged such a state law claim as part of count five. (Dk. 23, p. 31). Because the plaintiffs have not pursued and been denied just compensation under the state inverse condemnation remedy, the takings claim under the Fifth Amendment is not ripe for review in federal court. *See J.B. Ranch, Inc. v. Grand County*, 958 F.2d 306, 309 (10th Cir.1992). The Tenth Circuit has held that procedural and substantive due process claims which rest on the same facts as the takings claim "are subsumed within 'the more particularized protections of the [Takings] Clause.'" *Bateman*, 89 F.3d at 709 (quoting *Miller v. Campbell County*, 945 F.2d 348, 352–53 (10th Cir.1991) (applied ripeness requirement to substantive and pro-

cedural due process claims), *cert. denied*, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992)). Thus, the court concludes that the plaintiff's federal claims are not ripe for review and must be dismissed, that this court lacks subject matter jurisdiction over this case, and that the state law claims remaining in this case are remanded to the District Court of Marion County, Kansas. Accordingly, the court does not have jurisdiction to decide the defendants' other arguments seeking dismissal on the merits of the plaintiffs' state law claims or to decide the plaintiffs' motion to dismiss the defendants' counterclaim.

IT IS THEREFORE ORDERED that the plaintiffs' motion to dismiss the defendants' counterclaim or, in the alternative, for an order remanding the case (Dk. 4) is denied;

IT IS FURTHER ORDERED that the defendants' motion to dismiss the plaintiffs' complaint for failure to state a claim upon which relief can be granted (Dk. 13) is granted to the limited extent that the plaintiffs' federal civil rights claims under the Fifth and Fourteenth Amendment are dismissed without prejudice pursuant to Fed.R.Civ.P. 12(h)(3), and the court is without subject matter jurisdiction to decide the remaining issues in the defendants' motion or to decide the plaintiffs' motion to dismiss the defendant Board of County Commissioner's counterclaim on grounds of res judicata and collateral estoppel (Dk. 16);

IT IS FURTHER ORDERED that the remaining state law claims and counterclaims are remanded to the District Court of Marion County, Kansas, pursuant to 28 U.S.C. § 1447(c) without the payment of any just costs, actual expenses or attorney fees incurred as a result of this removal.[3]

---

**3.** The defendants' removal of this action was not frivolous. The plaintiffs did not seek a remand of the action on subject matter jurisdiction

grounds and did not concede or stipulate that their federal claims were not ripe. Consequently, the plaintiffs are in no position to complain

about lost time or resources caused by the re-moval of this case and the subsequent filings.